[Cite as *Litchfield Twp. Bd. of Trustees v. Nimer*, 2012-Ohio-5431.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

LITCHFIELD TOWNSHIP BOARD OF
TRUSTEES

     Appellee

     v.

ABDALLA NIMER, et al.

     Appellants

C.A. No.     11CA0037-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    09CIV2309

DECISION AND JOURNAL ENTRY

Dated: November 26, 2012

BELFANCE, Presiding Judge.

¶1 Appellants, Abdalla A. Nimer and Cathy Fobes Al-Nimer, appeal the order of the Medina County Court of Common Pleas that permanently enjoined them from using structures on their property for commercial purposes until they comply with the Litchfield Township Zoning Resolution. This Court affirms in part and reverses in part.

I.

¶2 The Nimers own property located at 9696 Crow Road and 9706 Crow Road in Litchfield Township. They also own Medina Meats, Inc., which processes and packages beef jerky, beef sticks and honey ham sticks for wholesale distribution. According to Mr. Nimer, they are one of the few remaining producers of beef jerky in the United States, and they operate on a large scale. The production and packaging is done at a processing facility located on 9706 Crow Road. That property is zoned for commercial use under the Litchfield Zoning Resolution, but the Nimers' operation spills over onto the adjacent property at 9696 Crow Road, part of which is

zoned for commercial use and part of which is zoned for residential use. The portion of the property that is zoned for commercial use contains an existing building. In 2009, the Nimers modified that existing building by expanding it and adding an extension structure that connected the building to the beef jerky facility. They built an 80 foot by 120 foot pole barn on the residentially zoned portion of 9696 Crow Road. Mr. Nimer claimed an agricultural exemption for this building based upon his representation that the barn was for storing hay and cattle. In January 2010, the Nimers constructed an additional 30 foot by 60 foot building on the residential portion of 9696 Crow which Mr. Nimer referred to as a "cattle barn." The Nimers did not fully comply with the Litchfield Township Zoning Resolution with respect to any of this activity, nor did they obtain necessary permits. Instead, they took the position that compliance with the zoning resolution was not required because their planned operations were an agricultural use of the property.

¶3 Litchfield Township filed a complaint for a permanent injunction against the Nimers, and the case proceeded to a bench trial on the issue of whether they were exempt from the zoning resolution because of an agricultural use. The trial court decided that any agricultural use of the property was secondary to the meat processing business and granted the permanent injunction. The Nimers appealed.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN GRANTING A PERMANENT INJUNCTION UPON THE ENTIRE LITCHFIELD PROPERTY WHERE THERE WAS A VIOLATION OF DEFENDANTS'/APPELLANTS' RIGHT OF DUE PROCESS[.]

¶4 The Nimers' first assignment of error is that they were deprived of procedural due process because (1) not all of the buildings subject to the injunction were included in the

complaint, (2) notice of potential violations was sent only to Mr. Nimer and not to Mr. and Mrs. Nimer jointly, and (3) the property has since been transferred to a limited liability corporation. We disagree.

¶5 "Before a protected liberty or property interest may be infringed, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Bd. of Trustees of Columbia Twp. v. Albertson*, 9th Dist. No. 01CA007785, 2001 WL 1240135, *5 (Oct. 17, 2001), citing *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996). Due process requires notice that is sufficient to permit a defendant to lodge objections. *W. Chester Twp. Bd. of Trustees v. Speedway Superamerica, L.L.C.*, 12th Dist. No CA2006-05-104, 2007-Ohio-2844, ¶ 43. It "is a flexible concept, and the procedures required vary as demanded by circumstances." *Riffe v. Ohio Real Estate Appraiser Bd.*, 130 Ohio App.3d 46, 51 (9th Dist.1998).

¶6 The Nimers' first argument is that the Township's complaint did not reference a pole barn constructed on the property that had been in the process of renovation, yet the trial court ordered that with respect to "any buildings on the property including any buildings that have been constructed or were in the process of being constructed when the Township filed its complaint[,]" the Nimers "may not occupy or use any such buildings in any manner except for the keeping and feeding of animals * * * [and] [i]n particular they may not use such buildings for the processing of meat, the storage of meat products, or as an office." The complaint specifically referenced the construction of a connecting structure between the structure located on the commercial portion of 9696 Crow Road and the existing meat processing facility, and broadly sought an injunction restraining construction and improvements on the subject properties. In March 2010, the parties appeared at a hearing during which the Township stated that it was

seeking injunctive relief as to any further construction activity on the entire property and further use of the buildings that had been constructed without a zoning certificate.

¶7 Several months later, at trial, both the Township and the Nimers presented evidence related to the use of both buildings located on the residential portion of the property. The Township requested amendment to the complaint under Civ.R. 15(B) to conform to the evidence. Under these circumstances, the Nimers did not lack notice nor an opportunity to respond, as demonstrated by Mr. Nimer's extensive testimony.

¶8 The Nimers have also argued that the Township only sent notice of the zoning violations to Mr. Nimer's attention rather than to Mr. and Mrs. Nimer. There is no dispute, however, that Mrs. Nimer was served with the complaint and that the Nimers had ample opportunity to defend the case. Similarly, they have argued that the trial court could not enjoin use of the subject property, which has since been consolidated into a single parcel and, according to the Nimers, transferred to a limited liability corporation. Although there was some testimony on this point at trial, Mr. Nimer also testified that the limited liability corporation is controlled by him and Mrs. Nimer and that the transfer was solely for the purpose of shielding their personal assets. In any event, it is clear that the Nimers had adequate notice and did, in fact, defend the case.

¶9 The Nimers' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING A PERMANENT INJUNCTION UPON THE LITCHFIELD PROPERTY WHERE DEFENDANTS/APPELLANTS MET THEIR BURDEN OF PROOF TO SHOW THAT THE USE OF THE LITCHFIELD PROPERTY WAS AGRICULTURAL UNDER R.C. 519.01 AND 519.21[.]

¶10 In their second assignment of error, the Nimers argue that the trial court erred in granting a permanent injunction because they demonstrated that the use of the parcel was agricultural and therefore exempt from the township zoning resolution. We disagree.

¶11 The Ohio Supreme Court has noted that, as a general rule, "[t]he grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." *Garono v. State*, 37 Ohio St.3d 171, 173 (1988). In this case, however, Mr. Nimer has argued that the evidence at trial established that the property at issue is agricultural. In other words, he has argued that the trial court's conclusion in that respect is against the manifest weight of the evidence. Accordingly, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

¶12 Although R.C. 519.02 grants townships the authority to adopt zoning resolutions, that authority is circumscribed by statute. *See Bd. of Twp. Trustees of Bainbridge Twp. v. Funtime, Inc.*, 55 Ohio St.3d 106 (1990), paragraphs one and two of the syllabus. *See also State ex rel. Schramm v. Ayres*, 158 Ohio St. 30, 33 ("[T]ownships are creatures of the law and have only such authority as is conferred on them by law."). Zoning resolutions are in derogation of the common law and deprive a property owner of certain otherwise lawful uses of his land. "Therefore, such resolutions are ordinarily construed in favor of the property owner. Restrictions on the use of real property by ordinance, resolution or statute must be strictly

construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed." *Terry v. Sperry*, 130 Ohio St.3d 125, 2011-Ohio-3364, ¶ 19. In addition, exemptions from restrictive zoning provisions are to be liberally construed. *Id*.

¶13 Under R.C. 519.21(A), townships cannot "prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located[]" or require a zoning certificate for such structures. "In other words, R.C. 519.21(A) provides two circumstances under which the use of a property is exempt from township zoning regulations: (1) the property is used for agricultural purposes or (2) the construction or use of buildings or structures on the property is incident to an agricultural use of the land." *Terry* at ¶ 21.

¶14 "Agriculture" is defined by R.C. 519.01:

> As used in section 519.02 to 519.25 of the Revised Code, "agriculture" includes farming; ranching; aquaculture; apiculture; horticulture; viticulture; *animal husbandry, including, but not limited to, the care and raising of livestock*, equine, and fur-bearing animals; poultry husbandry and the production of poultry and poultry products; dairy production; the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or mushrooms; timber; pasturage; any combination of the foregoing; and *the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production.*

(Emphasis added.) Applying the general definition of agriculture contained in R.C. 519.01, we must consider whether the Nimers' property could be seen to have a use for agriculture in caring for livestock or in the processing, storage, and marketing of agricultural products. *Terry* at ¶ 23.

**The Beef Jerky Facility**

¶15 In its complaint, the Township sought a permanent injunction prohibiting the Nimers from continuing any construction activity on the commercially zoned portion of 9696 Crow Road. This included the expansion of an existing building located in the commercially

zoned portion of 9696 Crow Road as well as the construction of an extension connecting this building to the beef jerky facility. The Nimers contend that because they are engaging in agriculture by virtue of their animal husbandry activities and because the beef jerky facility is engaged in the processing and marketing of agricultural products, the beef jerky facility is exempt as provided in R.C. 519.21(A). To qualify as "agriculture" pursuant to R.C. 519.01, however, the processing and marketing activity must be secondary to the animal husbandry. *Terry*, 130 Ohio St.3d 125, 2011-Ohio-3364, at ¶ 23.

¶16 The Nimers' business is producing beef jerky and beef sticks on a large scale, with annual gross revenues of approximately $6.2 million. Although they do have a small retail store on the Crow Road property, Mr. Nimer testified that most people do not know that it is there and that his business is overwhelmingly wholesale production for various distributors. Mr. Nimer testified that the processing business requires 400,000 pounds of beef hearts, which he purchases exclusively from outside sources, and almost one million pounds of meat per year, or approximately 1,187 cattle. Of that total, 39% of the meat and 100% of the beef hearts come from outside sources, while 71% of the meat comes from cattle that he purchases and initially raises on another property that he owns which he referred to as the Chatham farm.

¶17 At trial, Mr. Nimer described the location of the cattle from the time he purchases them over the rest of their lifespan. Specifically, he testified that he buys the cattle from a vendor when they are between 800 and 900 pounds and maintains them at the Chatham farm until they grow to 1,000 pounds. Mr. Nimer consulted a specialist who helped him devise a plan so that he could ensure that his healthy cattle would not get ill from other diseased cattle. By keeping his cattle at the Chatham farm he could ensure that they were either disease-free or sufficiently free from antibiotics prior to being transported to Crow Road. According to the plan,

Mr. Nimer would take healthy cattle from the Chatham farm and bring them to Crow Road in small batches at which point he would care for them another 30 to 40 days until they attain a weight of about 1,200 pounds and are ready for slaughter. He anticipated that he would slaughter 30 cattle weekly while maintaining another 30 on the Crow Road property.

¶18 Mr. Nimer uses an outside business for slaughtering although he hoped to bring the slaughtering to Crow Road while maintaining the "continuous cycle" of rotating mature cows onto the Crow Road property for 30-40 days before slaughter and processing. Mr. Nimer also indicated that he would continue to purchase all of the beef hearts used in the production from outside sources. Mr. Nimer also testified that he wished to build several additional buildings on the residentially zoned portion of the Crow Road property so that he could begin to raise pigs and process the meat for producing honey ham sticks. He indicated that he was currently producing honey ham sticks at the beef jerky facility, but this was very tedious because all of the equipment had to be cleaned and special precautions taken so as to ensure that the production of beef products and ham sticks were completely separate. Mr. Nimer also planned to raise the pigs at the Chatham farm and transport them in batches over to the Crow Road property for additional growth prior to slaughter. As of the date of trial, there were 21 head of cattle on the Crow Road property. Thus, according to his plan, Mr. Nimer anticipated caring for approximately 60 head of cattle at any one time and an unspecified number of pigs while maintaining the remainder at the Chatham farm.

¶19 In light of the evidence, we conclude that the beef jerky business does not constitute "agriculture" within the meaning of R.C. 519.01. It is clear that the care of livestock constitutes agriculture as defined in R.C. 519.01, and Mr. Nimer demonstrated that he is engaging in agriculture by caring for cattle on his property. In addition, the processing and

marketing of the beef products could fall within the definition of agriculture if it were secondary to the care of the cattle. Here, however, it is apparent that the marketing and processing operation on the property is not secondary to the care of the livestock that occurs on the Crow Road property. In this respect, we note that it is particularly significant that, at the time of trial, Mr. Nimer was caring for only 21 heads of cattle on the Crow Road property. However, according to his own testimony, his processing and operation entails thousands of pounds of meat as well as beef hearts that Mr. Nimer does not raise or care for on the land.

**Use of Buildings on the Land**

¶20    As noted above, a township has no power to prohibit the "use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located[.]" R.C. 519.21(A). In this case, there are four structures at issue, two that are located on the commercial portion of the Crow Road property and two that are located on the residentially zoned portion.

¶21    The township sought an injunction prohibiting Mr. Nimer from engaging in further construction activity on an existing building and an extension that connected this building to the Medina Foods Plant. The evidence adduced at trial demonstrated that the building and the extension are used for the beef jerky business and not used in conjunction with the care of the cattle. As we have concluded that the beefy jerky operation does not constitute agriculture, it cannot be said that the use of the building and extension are incident to an agricultural use.

¶22    The township also sought a permanent injunction as to two structures located on the residential portion of 9696 Crow Road. The first was a pole barn that measures 80 by 120 feet and the second was an 80 by 60 foot structure referred to as a cattle barn. According to Mr. Nimer, he told Eric Noderer, the township zoning inspector, that he planned to use the 80 by 120

foot pole barn structure as a hay barn and submitted a form describing its agricultural use to that effect. As noted above, Mr. Nimer testified he planned to turn it into a pork processing facility similar to the existing beef processing facility. He also planned to build two more buildings the same size that would attach to the existing structure and be part of the same processing facility. With respect to the current use of the structure, Mr. Noderer testified that while he had not been permitted inside, the exterior made it appear that it was presently being used or prepared for office space. On cross-examination, Mr. Nimer testified that the structure had been partially drywalled and fitted with rough plumbing and electrical wiring sufficient to process pork. Mr. Nimer testified that the structure was not currently being used for any purpose other than to store some machinery.

¶23 The trial court determined that the Nimers could use the two buildings located on the residential portion of the land for the keeping and feeding of animals and the storage of feed, however, they could not use the buildings for the processing and storage of meat products or as an office. Considering this testimony, and particularly in light of Mr. Nimer's own testimony that he planned to use this structure to expand his commercial operations, the trial court did not err granting an injunction which allowed Mr. Nimer to use the buildings in a manner consistent with his agricultural use of the land but prohibited Mr. Nimer from using it in furtherance of his beef jerky business which, as noted above, does not constitute agriculture as defined in R.C. 519.01.

¶24 To summarize, the care of the cattle constitutes agriculture. However, the meat processing business does not fall within the definition of "agriculture" under R.C. 519.01 because it is not "in conjunction with, but secondary to" the care of livestock. Similarly, the structures located on the commercial portion of the Crow Road property at issue are not subject

to the agricultural exemption set forth in R.C. 519.21(A) for buildings "incident to the use for agricultural purposes[.]" The buildings located on the residential portion of the Crow Road property are exempt from zoning to the extent that their use is incident to the care of the cattle.

¶25 The trial court's decision that the Nimers' use of the property and buildings at issue was nonagricultural is not against the manifest weight of the evidence because the meat processing activities on Crow Road are not "agriculture" as defined in R.C. 519.01 and the use of the buildings on the Crow Road property for meat processing are not incident to an agricultural use on the land so as to exempt them from zoning. The Nimers' second assignment of error is, therefore, overruled in that respect. To the extent that the trial court enjoined all uses of the buildings on the Nimers' property, whether agricultural or not, other than "the keeping and feeding of animals" or "the storage of feed," however, the scope of the injunction is overbroad, and the second assignment of error is sustained in that respect.

### ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED IN GRANTING A PERMANENT INJUNCTION UPON THE ENTIRE LITCHFIELD PROPERTY WHERE LITCHFIELD'S ENFORCEMENT OF THE ZONING RESOLUTION VIOLATED DEFENDANTS'/APPELLANTS' RIGHT OF EQUAL PROTECTION UNDER THE LAW[.]

¶26 The Nimers' third assignment of error is that the trial court erred by enjoining the use of their property when other similarly situated properties were not required to comply with the Litchfield Township Zoning Resolution.

¶27 Although the Nimers made this argument in the trial court, they did so with only passing and conclusory reference to the persons who, according to them, are being treated differently by Litchfield Township. Specifically, testimony on the issue was limited to Mr. Nimer's own belief about the nature of the agricultural exemptions applied to the properties and

the zoning inspector's suspicion that the agricultural use of those properties might be secondary to commercial uses. There is no evidence in the record establishing that there are properties similarly situated to the Crow Road property at issue or that they are, in fact, being treated differently. Without such a record, it is impossible for this Court to determine the merits of the Nimers' equal protection argument, and their third assignment of error is overruled.

III.

¶28 The Nimers' first and third assignments of error are overruled. Their second assignment of error is sustained in part. The judgment of the Medina County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
DICKINSON, J.
CONCUR.

APPEARANCES:

THEODORE J. LESIAK, Attorney at Law, for Appellants.

DEAN HOLMAN, Prosecuting Attorney, and TOM J. KARRIS and BRIAN RICHTER, Assistant Prosecuting Attorneys, for Appellee.