[Cite as *Columbus v. 71-73 E. Norwich Ave., L.L.C.*, 2025-Ohio-2240.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

City of Columbus,                               :

    Plaintiff-Appellee,                      :

                                          No. 24AP-484

v.                                              :       (M.C. No. 2022 EVH 60737)

71-73 E. Norwich Avenue, LLC et al.,            :

                                          (REGULAR CALENDAR)

    Defendants-Appellants.                   :

---

D E C I S I O N

Rendered on June 26, 2025

---

**On brief:** [*Zachary M. Klein*, City Attorney,] and *Christopher C. Clark*, for appellee. **Argued:** *Christopher C. Clark*.

**On brief:** *Kevin E. Humphreys*, for appellants. **Argued:** *Kevin E. Humphreys*.

---

APPEAL from the Franklin County Municipal Court

EDELSTEIN, J.

{¶ 1}   Defendants-appellants, 71-73 E. Norwich Avenue, LLC ("Norwich") and the real property located at 71-73 E. Norwich Avenue, Columbus, Ohio 43201 (the "Premises") (collectively "appellants"), appeal from the January 8, 2024 judgment of the Franklin County Municipal Court, Environmental Division, permanently enjoining appellants and any successors and heirs from maintaining a public nuisance at the Premises or any other property in Franklin County.  For the following reasons, we vacate, in part, the judgment below as to the imposition of the permanent injunction.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2}   Norwich is the owner of the Premises, a vacant two-family dwelling in Columbus. (*See* Nov. 28, 2022 Compl. at 2. *See also* Compl., Ex. A; Jan. 8, 2024 Tr. at 25,

42.)  On November 28, 2022, plaintiff-appellee, the City of Columbus ("the City"), filed a complaint for injunctive relief against Norwich and the Premises in the Franklin County Municipal Court, Environmental Division.  The City alleged various violations of the Columbus City Code ("C.C.C.") that it argued constituted a public nuisance, as defined in R.C. 3767.41(A)(2)(a) and C.C.C. 4703.01(F), 4501.275 and 4101.16, and requested the trial court declare the Premises a public nuisance.  (Compl. at 3-4.)  The City also requested an order requiring Norwich and any successor(s) in interest or title to bring the Premises into compliance with the C.C.C. and the Ohio Revised Code.  (*See* Compl. at 4.)  And, particularly relevant here, the City requested the trial court preliminarily and permanently enjoin Norwich "and any successor(s) in interest or title from further violating" any applicable provisions of the City Code and state law.  (*See* Compl. at 4.)

{¶ 3}  The matter proceeded to a hearing on January 8, 2024.  At the hearing, the City presented evidence and testimony from City Code Enforcement Officer Greg Hedrick about specific C.C.C. violations he observed while inspecting the Premises on April 29, 2022.  (*See* Tr. at 6-9; Compl., Ex. A.)  As alleged in the City's complaint, Mr. Hedrick detailed the code violations he observed in Notice of Violation Order 22450-00651 (the "Order") and sent a copy of the Order to Norwich.  (*See* Compl. at 3.)  Although not included in the record before us, that Order purportedly "stated that the violations needed to be corrected within 30 days of service of that order, unless an extension was granted." (Compl. at 3.)

{¶ 4}  It is unclear when Norwich was served with the Order.  In any event, Jack Beatley, the sole member of the Norwich limited liability company, admitted to receiving it and testified he sent "an appeal letter," dated May 10, 2022, to "code enforcement" regarding the Order.  (*See* Tr. at 27-29; Hearing Ex. 1.)

{¶ 5}  As alleged in the City's complaint, Mr. Hedrick re-inspected the Premises on October 13, 2022 and found the nuisance violations detailed in his April 2022 Order had not been abated.  (Compl. at 3.)  At the January 8, 2024 hearing, Mr. Hedrick testified that he returned to the Premises on the morning of the hearing and verified it was still in violation of the City Code.  (Tr. at 7-10.)  The City presented photographs of the Premises Hedrick took on the morning of January 8, 2024 as Hearing Exhibits A through E.  (Tr. at 7-22.)  Mr. Beatley testified about visiting the property around 10:00 a.m. that day, and

admitted the photographs fairly and accurately depicted the Premises at that time. (Tr. at 39-40.)

{¶ 6} At the conclusion of the hearing, the trial court found the Premises was out of compliance with numerous provisions of the City Code and declared it a public nuisance. (Tr. at 55.) The propriety of those findings is not at issue in this appeal. The trial court then ordered appellants to bring the Premises into compliance with the City Code by or before February 8, 2024. (Tr. at 55.) It is undisputed that appellants complied with that order. (*See* July 8, 2024 Entry (finding property was in compliance and closing case).)

{¶ 7} At issue in this appeal is the trial court's imposition of a permanent injunction. In its January 8, 2024 judgment entry, the trial court checked the eighth box of a form judgment entry, which states: "Defendant(s) and any successors and heirs are permanently enjoined from maintaining a public nuisance at the subject property or any other property in Franklin County. This permanent injunction shall run with the land and shall be binding upon the real estate itself." ("Box 8"). Indeed, at the January 8, 2024 hearing, the trial court stated that, under its order, appellants are "now required to comply with all applicable laws and codes." (Tr. at 56.) The trial court also declared that the "permanent injunction will run with the land," meaning, "if another owner should come along and take over this property, that injunction still stands." (Tr. at 57.) Counsel for appellants orally objected to the permanent injunction, observing that some City Code violations have criminal components to them and arguing the trial court's permanent-injunction order could not be reconciled with the purpose of permanent injunctions and relevant case law. (*See* Tr. at 58-59.) On January 16, 2024, appellants filed a written motion for findings of fact and conclusions of law, pursuant to Civ.R. 52.

{¶ 8} On July 8, 2024, the trial court issued findings of fact and conclusions of law justifying its imposition of the permanent injunction provided for in Box 8 of the January 8, 2024 judgment entry. It concluded that it "has broad discretion in issuing or denying an injunction" and found that "Ohio [l]aw authorizes injunctions to prevent violations, not just to terminate existing violations." (Emphasis omitted.) (July 8, 2024 Findings of Fact and Conclusions of Law at 3-4.)

{¶ 9} Appellants now appeal the trial court's imposition of the permanent injunction, and assert the following three assignments of error for our review:

[I.] THE TRIAL COURT ERRED BY ISSUING A PERMANENT INJUNCTION IN EXCESS OF THE SPECIFIC CONDITIONS COMPLAINED OF IN RELATION TO THE STATUTORY VIOLATION(S) AT ISSUE.

[II.] THE TRIAL COURT ERRED BY ORDERING THAT ITS INJUNCTION RUNS WITH THE LAND AND SHALL BE BINDING UPON THE REAL ESTATE ITSELF.

[III.] THE TRIAL COURT ERRED BY PROCEEDING UPON THE CODE VIOLATIONS AT ISSUE DUE TO THE FACT THAT [THE CITY] HAD NOT EXHAUSTED THE ADMINISTRATIVE REMEDIES, IN VIOLATION OF [APPELLANTS'] DUE PROCESS RIGHTS.

## II. ANALYSIS

### A. Third Assignment of Error

{¶ 10} We begin by addressing appellants' third assignment of error, alleging deprivation of an available administrative appeal process. Under C.C.C. 4509.03(A) and 4701.13, appellants were permitted to appeal from the April 2022 Order within 15 days after the notice of violation was served by "fil[ing] a written petition for such appeal hearing with the department [of building and zoning services]" setting forth "the factual reasons why a particular violation or violations is being appealed." C.C.C. 4509.03(A). *See also* C.C.C. 4701.13 (providing that any notice of violation for an alleged nuisance-code violation shall be made "pursuant to the requirements prescribed in Columbus City Code Chapter 4509"); C.C.C. 4501.075 (defining "department" to mean the "building and zoning services"); C.C.C. 4703.01(B) (the same).

{¶ 11} In this case, Mr. Beatley testified about sending an appeal letter, dated May 10, 2022, concerning this matter to "code enforcement." (Tr. at 27-28.) In support, he produced a copy of that letter. (Hearing Ex. 1.) On review, we note his letter is not addressed to any particular entity; thus, we have no basis to find it was sent to the department of building and zoning services ("department"), as required by C.C.C. 4509.03(A)(1) and 4701.13. And, on review of the record before us—including Mr. Beatley's testimony at the January 8, 2024 hearing—nothing suggests the appeal letter was received by the department. Indeed, the City averred in its complaint that the April 2022 Order was not appealed (*see* Compl. at 3), and appellants' answer was equivocal on this front:

"Defendants ***believe*** that an administrative appeal was submitted upon which no action was taken by the Plaintiff, and/or no notice and/or insufficient notice was provided in connection with said process(es)." (Emphasis added.) (Jan. 17, 2023 Answer at ¶ 20.)

{¶ 12} For these reasons, we find no basis to conclude appellants properly exercised their right to challenge the validity of the Order by means of administrative appeal, as contemplated by C.C.C. 4509.03(A) and 4701.13. As such, we overrule appellants' third assignment of error.

### B. First and Second Assignments of Error

{¶ 13} In their first and second assignments of error, appellants assert the trial court erred in permanently enjoining appellants, along with any successors and heirs, from maintaining a public nuisance at the subject Premises—a vacant structure—***or any other property in Franklin County*** and ordering that the permanent injunction run with the land after the nuisance violations alleged in the City's complaint were abated.

{¶ 14} The City sought injunctive relief pursuant to R.C. 715.30, the Nuisance Abatement Code of the City of Columbus (C.C.C. Title 47), and the Housing Code of the City of Columbus (C.C.C. Title 45). When a statute authorizes a specific injunctive remedy to an individual, the state, or a municipality, the requested statutory injunction "should issue if the statutory requirements are fulfilled." *Columbus Steel Castings Co. v. King Tool Co.*, 2011-Ohio-6826, ¶ 66 (10th Dist.), citing *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 57 (1978). On appeal, we will not reverse the trial court's judgment absent a showing of an abuse of discretion. *See, e.g.*, *Garono v. State*, 37 Ohio St.3d 171, 173 (1988), citing *Perkins v. Village of Quaker City*, 165 Ohio St. 120, 125 (1956).

{¶ 15} "[A]buse of discretion connotes that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotations omitted.) *State v. Weaver*, 2022-Ohio-4371, ¶ 24, quoting *State v. Gondor*, 2006-Ohio-6679, ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19.

{¶ 16} "A decision is unreasonable if there is no sound reasoning process that would support the decision." (Internal quotations omitted.) *Fernando v. Fernando*, 2017-Ohio-9323, ¶ 7 (10th Dist.), quoting *AAAA Ents., Inc. v. River Place Community Urban*

*Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). A decision is arbitrary if it is made "without consideration of or regard for facts [or] circumstances." (Internal quotations omitted.) *State v. Hill*, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed. 2014). A decision may also be arbitrary if it lacks an adequate determining principle and is not governed by any fixed rules or standards. *See Beasley* at ¶ 12, citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's Law Dictionary* 96 (5th Ed. 1979). *See also Hackett* at ¶ 19. A decision is unconscionable if it "affronts the sense of justice, decency, or reasonableness." *Fernando* at ¶ 7, citing *Porter, Wright, Morris & Arthur, LLP v. Frutta Del Mondo, Ltd.*, 2008-Ohio-3567, ¶ 11 (10th Dist.). Further, an abuse of discretion may also be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶ 17} On purely legal questions, we apply de novo review. *New Asian Super Mkt. v. Weng*, 2018-Ohio-1248, ¶ 16 (10th Dist.).

{¶ 18} At issue in this case is whether R.C. 715.30, the Nuisance Abatement Code of the City of Columbus (C.C.C. Title 47), or the Housing Code of the City of Columbus (C.C.C. Title 45) permitted the trial court to impose the eighth item on the January 8, 2024 form judgment entry, which states: "Defendant(s) and any successors and heirs are permanently enjoined from maintaining a public nuisance at the subject property or any other property in Franklin County. This permanent injunction shall run with the land and shall be binding upon the real estate itself." (Box 8.) Applying principles of statutory interpretation, we find this injunction far exceeded the scope permitted by R.C. 715.30 and the applicable C.C.C. ordinances.

{¶ 19} Statutory interpretation is a question of law subject to de novo appellate review. *State v. Banks*, 2011-Ohio-4252, ¶ 13 (10th Dist.). A court's duty is to give effect to the words used in a statute, not to delete or insert words. *See, e.g.*, *Ayers v. Cleveland*, 2020-Ohio-1047, ¶ 17; *State v. Jordan*, 89 Ohio St.3d 488, 491 (2000) ("[T]he cornerstone of statutory construction and interpretation is legislative intention."). "In order to determine legislative intent it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself." *Jordan* at 492. When the text of the statute

in question is plain and unambiguous, we must give effect to the legislature's intent by simply applying the law as written. *State v. Kreischer*, 2006-Ohio-2706, ¶ 12; *State v. Hairston*, 2004-Ohio-969, ¶ 13, citing *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus (stating that, if a statute is not ambiguous, "we need not interpret it; we must simply apply it"). Indeed, "[t]o interpret what is already plain is not interpretation, but legislation, which is not the function of the courts, but of the general assembly." *Sears* at 316. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." *State v. Porterfield*, 2005-Ohio-3095, ¶ 11. *See also Hairston* at ¶ 11.

{¶ 20} Ambiguity exists only if the language of a statute is susceptible to more than one reasonable interpretation. *See, e.g., State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513 (1996). If a statute is ambiguous, R.C. 1.49 provides that a court may consider " 'other matters,' such as the object sought to be attained and the consequences of a particular construction, to determine the intent of the legislature." *Columbus v. Mitchell*, 2016-Ohio-7873, ¶ 6 (10th Dist.), citing *State v. Polus*, 2016-Ohio-655, ¶ 7, citing R.C. 1.49.

{¶ 21} Chapter 715 of the Ohio Revised Code grants general powers to municipal corporations. Specifically, R.C. 715.26 through 715.30 grants powers related to buildings and construction. In this case, the City brought an action seeking an injunction to prevent violations of the City Code under R.C. 715.30, which provides:

> No person shall erect, construct, alter, repair, or maintain any residential building, office, mercantile building, workshop, or factory, including a public or private garage, or other structure, within any municipal corporation wherein ordinances or regulations have been enacted pursuant to sections 715.26 to 715.29, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution, unless said ordinances or regulations are fully complied with. In the event any building or structure is being erected, constructed, altered, repaired, or maintained in violation of any such ordinances or regulations, or there is imminent threat of violation, the municipal corporation, or the owner of any contiguous or neighboring property who would be especially damaged by such violation, in addition to any other remedies provided by law, ***may institute a suit for injunction to prevent or terminate such violation***.

(Emphasis added.) We have previously found that the text of R.C. 715.30 is not ambiguous. *See Ullmann v. Columbus*, 2024-Ohio-5223, ¶ 33 (10th Dist.). It "allows municipal

corporations to seek injunctions for maintenance issues, if those maintenance issues violate a municipal ordinance or imminently threaten[] to violate an ordinance." *Id.*

{¶ 22} Appellants argue that, under a plain reading of R.C. 715.30, the use of "such violation" in the last sentence of the statute only authorizes an action to prevent the code violations identified in the complaint—not any and all future violations of city ordinances or regulations as the trial court ordered in its January 8, 2024 judgment entry. (*See* Appellant's Brief at 16-17.) Although the City agrees the language of R.C. 715.30 is unambiguous, it relies on principles of equity to suggest this statute permits a permanent injunction, in perpetuity, as issued here. (*See* Appellee's Brief at 6-8.) Specifically, the City takes issue with the possibility that the trial court would be required "to issue a new injunction every time any other type of condition that violated the City of Columbus's public nuisance laws appeared at this property." (Sic) (Appellee's Brief at 8.) Even if that were true, the City provides no compelling authority to support the trial court's decision to permanently enjoin appellants from maintaining a public nuisance at any other property in Franklin County. Nor does the City provide a viable legal basis for the permanent injunction to be effective against appellants or subsequent owners of the Premises *after* the violations charged in the complaint and found by the trial court were abated as ordered. (*See* Appellee's Brief at 11-12.)

{¶ 23} The City contends that Ohio law "does not require an injunction be specific to a singularly identifiable existing violation," and cites to three cases from other Ohio appellate district courts involving zoning-ordinance violations—not building code violations—in support of that proposition. (*See* Appellee's Brief at 5.) None of these cases involved the injunction contemplated by R.C. 715.30. *See Office of the Scioto Twp. Zoning Inspector v. Puckett*, 2015-Ohio-1444 (4th Dist.) (affirming trial court's imposition of a permanent injunction enjoining property owners from operating a commercial pay lake in an area zoned for agricultural use under R.C. 519.24); *Village of New Holland v. Murphy*, 2021-Ohio-2671 (4th Dist.) (affirming trial court's imposition of a permanent injunction enjoining property owners from operating a business on their property in a residential district under R.C. 713.13); *Benton Twp. v. Rocky Ridge Dev., LLC*, 2020-Ohio-4162 (6th Dist.) (affirming trial court's imposition of a permanent injunction enjoining property development company from blending spent lime into the soil and performing other

industrial activity on property zoned as A-3 (agricultural/single-family homes) under R.C. 519.24). And because these cases all involved the operation of commercial activity on land zoned for residential or agricultural purposes, it makes sense that the permanent injunctions would broadly prohibit all conduct contrary to the land's legally designated use. *See, e.g.*, *Litchfield Twp. Bd. of Trustees v. Nimer*, 2012-Ohio-5431, ¶ 25 (9th Dist.) (affirming trial court's order permanently enjoining beef jerky producers from using structures on property for commercial, nonagricultural purposes (processing and marketing beef products), in violation of zoning resolutions under R.C. 519.21, but finding that, "[t]o the extent that the trial court enjoined all uses of the buildings on the . . . property, whether agricultural or not, . . . the scope of the injunction is overbroad"). However, these cases have no bearing on our analysis of the injunction imposed here.

{¶ 24} Ultimately, we find the permanent injunction imposed in this case far exceeded the scope of the injunctive relief permitted by R.C. 715.30. We have previously found that R.C. 715.30 "allows municipal corporations to seek injunctions for maintenance issues, if those maintenance issues violate a municipal ordinance or imminently threatens to violate an ordinance." *Ullmann*, 2024-Ohio-5223, at ¶ 33. The plain language of the statute confirms this interpretation. R.C. 715.30 states that, "[i]n the event any building or structure ***is being*** . . . ***maintained*** in violation of any such ordinances or regulations, or there is ***imminent threat of violation***, the municipal corporation, . . . in addition to any other remedies provided by law, may institute a suit for injunction to prevent or terminate ***such violation***." (Emphasis added.) We find that "such violation" refers back to the clause "[i]n the event any building or structure ***is being*** . . . ***maintained*** in violation of any such ordinances or regulations, or there is ***imminent threat*** of violation" employed earlier in R.C. 715.30. (Emphasis added.) Thus, R.C. 715.30 requires the injunction sought be based on a specific violation that currently exists or whose existence is imminent. Indeed, had the phrase "such [***a***] violation" been used, it would include more than just the employed phrase "is being . . . maintained" or "imminent threat of violation." *See* R.C. 715.30. This is because the phrase "such [***a***] violation" would logically reference any violation of the municipality's building codes and ordinances, not just the one(s) giving rise to the action and the ultimate injunction.

{¶ 25} It is axiomatic that a court's duty is to give effect to the words used in a statute, not to delete *or insert* words. *State v. Maxwell*, 2002-Ohio-2121, ¶ 10. Thus, based on our de novo review of R.C. 715.30, we find the statute's plain language permits a municipality to obtain a permanent injunction against a property owner in order to (1) "terminate" an existing violation of building ordinances and regulations, or (2) "prevent" an "imminent threat of violation." R.C. 715.30. As such, R.C. 715.30 does not permit the overbroad permanent injunction imposed by the trial court in this case and instead should have been limited to the conditions giving rise to the trial court's violation findings.

{¶ 26} The trial court also relied on the City Code to support its imposition of a permanent injunction prohibiting appellants "and any successors and heirs . . . from maintaining a public nuisance at the subject property or any other property in Franklin County." (Jan. 8, 2024 Jgmt. Entry.) However, based on our de novo review of the relevant provisions, we find no basis to conclude a permanent injunction like the one imposed in this case is contemplated by the City Code.

{¶ 27} The City's Nuisance Abatement Code permits the director of the department of building and zoning services or designee ("director") to "cause to be filed in the environmental division of the Franklin County Municipal Court a civil complaint for injunctive relief seeking abatement of the public nuisance building or structure" upon a determination that the vacant building or structure constitutes a public nuisance. C.C.C. 4701.08(C). It is true, as the City notes, that the Nuisance Abatement Code provides that a served notice of violation will be effective against subsequent owners under certain circumstances. But, those are not present here.

{¶ 28} Most significantly, the cited violations at the Premises *have been abated*. C.C.C. 4701.90 and 4701.09 provide that a served notice of violation "shall be effective as to anyone having any interest in the building, premises or real estate" "whether recorded or not at the time the order was issued, and shall be effective against any subsequent owner *as long as the conditions specified in the notice of violation remain and the public nuisance has not been abated as ordered*." (Emphasis added.) C.C.C. 4701.90(C). *See also* C.C.C. 4701.09(C) (providing that a served notice of violation "shall be effective against any subsequent owner as long as the conditions causing the building,

premises or real estate, including vacant land, or appurtenances thereto exist and there remains a city record of the notice of violation in a public file maintained by the director").

{¶ 29} Based on the foregoing, we find no statutory or regulatory authority supporting the permanent injunction prohibiting appellants "and any successors and heirs . . . from maintaining a public nuisance at the subject property or any other property in Franklin County" after the specific nuisance violations alleged in the City's complaint were abated. (Jan. 8, 2024 Jgmt. Entry.) Since the specific nuisance violations alleged in this case were abated by Norwich in February 2024, the injunction imposed in Box 8 of the January 8, 2024 judgment entry is no longer valid. Accordingly, we sustain appellants' first assignment of error.

{¶ 30} In their second assignment of error, appellants contend that the trial court erred in ordering that the injunction run with the land and be binding upon the real estate itself. However, because appellants' have abated the nuisance violations alleged in the City's complaint and in light of our determination that the permanent injunction imposed in this case is no longer valid, we decline to address appellants' second assignment of error.

## III. CONCLUSION

{¶ 31} For the foregoing reasons, we reverse, in part, the judgment of the Franklin County Municipal Court, Environmental Division, as to the imposition of the permanent injunction, and remand to the trial court for further proceedings consistent with this decision.

*Judgment reversed, in part; cause remanded.*

JAMISON, P.J. and BEATTY BLUNT, J., concur.

———————